UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELIZABETH G.,<br><br>    Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. C21-5221-SKV<br><br>ORDER REVERSING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of her application for Child Disability Benefits ("CDB"). Having considered the ALJ's decision, the administrative record ("AR"), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1971, suffered a traumatic brain injury in a car accident on April 3, 1991, and was found eligible for Supplemental Security Income ("SSI") payments as of August 2, 1994. *See* AR 16, 19.

Plaintiff applied for CDB in March 2017, alleging she became disabled on the day of her car accident. AR 407-08. Plaintiff's application was denied initially and on reconsideration,

ORDER REVERSING THE COMMISSIONER'S
DECISION - 1

and Plaintiff requested a hearing. AR 186-88, 191-95. After the ALJ conducted hearings in May and August 2019 (AR 43-59, 103-32), the ALJ issued a partially favorable decision finding Plaintiff disabled from April 3, 1991, through April 3, 1993, but not disabled thereafter. AR 157-68. The Appeals Council granted Plaintiff's request for review and vacated the ALJ's decision and remanded for further proceedings with instructions. AR 182-84.

The ALJ held another hearing in July 2020 (AR 60-102), and subsequently issued a decision finding Plaintiff not disabled during the adjudicated period running from April 3, 1991, through March 5, 1993. AR 15-30.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**: Plaintiff did not engage in substantial gainful activity during the adjudicated period running from April 3, 1991, through March 5, 1993.

**Step two**: During the adjudicated period, Plaintiff had the following severe impairments: traumatic brain injury, status post motor vehicle accident; and depressive disorder, not otherwise specified.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity**: During the adjudicated period, Plaintiff could perform light work with additional limitations: she could never climb ladders, ropes, or scaffolds. She could not be exposed to hazards. She could perform simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions, and with few, if any, workplace changes. She could have no contact with the public. She could have occasional superficial contact with co-workers.

**Step four**: Plaintiff had no past relevant work during the adjudicated period.

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed during the adjudicated period, Plaintiff is not eligible for benefits during the adjudicated period.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, App. 1.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 2

AR 15-30.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 4.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to determine whether the error alters the outcome of the case."  *Id*.

Substantial evidence is "more than a mere scintilla.  It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

//

**DISCUSSION**

Plaintiff argues the ALJ erred in assessing the medical opinion evidence to find her not disabled during the adjudicated period. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

The record contains testimony from three medical experts who testified in 2019 and 2020 that Plaintiff met and/or equaled Listings 11.18A, 11.02, 12.02, and/or 12.03 during the adjudicated period, based on their review of the longitudinal record. *See* AR 108-12, 68-95. "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'" *Ryan v. Comm'r of Social Sec.*, 528 F.3d 1194, 1201-02 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(3)). The ALJ discounted the expert testimony to the extent it supported a finding of disability[3] as uncorroborated by the evidence dating to the adjudicated period and inconsistent with the evidence showing that Plaintiff improved after the car accident and did not begin experiencing seizures until after the adjudicated period. AR 26-28. The ALJ indicated that she was "unable to infer disability back to [Plaintiff's] window of eligibility[,]" in light of the lack of records dating to the adjudicated period. AR 25.

There are certainly many challenges presented by this case given the remoteness of the adjudicated period, the destruction of her prior Social Security file, and the gaps in the available records, but the Court finds that the ALJ's discounting of the medical expert testimony as speculation is unreasonable. First, the medical experts' testimony is not mere speculation; the

---

[3] One of the medical experts qualified his testimony based on the ALJ's questioning whether evidence dating to the adjudicated period supported his opinion that Plaintiff equaled a listing during the period (AR 74), but initially testified that he believed that "in all medical probability" Plaintiff's seizures documented after the adjudicated period stemmed from her car accident in 1991. AR 73. The ALJ credited the expert's testimony that no evidence dating to the adjudicated period supported his initial conclusion, thereby implicitly rejecting his initial testimony. *See* AR 27.

experts provided medical opinions informed by their review of the available records.  The medical experts were called *because* of the gaps in the record during the adjudicated period — the ALJ herself acknowledged that determining the onset date in this case required inferences (AR 25) — and these providers' expertise permits them to make those inferences, even if the ALJ was not able to make such inferences herself.  Indeed, agency guidance contemplates that medical experts may assist in inferring an onset date despite a dearth of contemporaneous records.  *See, e.g.*, Social Security Ruling ("SSR") 18-01p, 2018 WL 4945639 at *5-6 (Oct. 2, 2018).

Furthermore, the ALJ held the lack of contemporaneous treatment records against Plaintiff without addressing the explanation that she provided at the hearing.  Plaintiff testified that her lack of mental health treatment from the time that she was discharged from inpatient treatment in January 1992 through March 1993 was due to her lack of insight into her need for treatment due to her severe trauma and abuse for many years.  AR 121-27.  Plaintiff also explained that during this time period she entered an abusive marriage and had children that were subsequently removed from her custody.  AR 119-20.  This testimony provides at least a plausible explanation for the lack of treatment, and the ALJ erred in failing to address it in the decision.  *See* SSR 16-3p, 2017 WL 5180304 at *9 (Oct. 25, 2017) ("We will not find an individual's symptoms inconsistent with the evidence in the record [on the basis of *inter alia* lack of treatment] without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints.").

Instead, the ALJ found that Plaintiff's lack of treatment for much of the adjudicated period suggested that her functioning must have improved.  AR 25 (citing AR 861 as evidence of improvement).  The treatment note cited by the ALJ indicates that Plaintiff had improved to

some degree, but was going to require ongoing outpatient physical, occupational, speech, and cognitive therapy once she was discharged from inpatient treatment. AR 861; *see also* AR 867. There is also evidence that Plaintiff had started psychotherapy toward the end of 1991 (although no treatment notes are in the record) and had intended to continue after she was discharged from inpatient psychiatric treatment preceded by suicidal behavior in January 1992. *See* AR 872-75.

With this record in mind, the Court finds that the ALJ erred in focusing on the lack of records dating to much of the adjudicated period as the grounds to discount the medical expert testimony. *See, e.g.*, *Diedrich v. Berryhill*, 874 F.3d 634 (9th Cir. 2017) (instructing that where there are gaps in the medical record, an ALJ should call a medical expert to provide an "informed inference" as to the disability onset date). The medical experts testified that the record permitted them to infer that Plaintiff's disability onset during the adjudicated period, and the ALJ failed to provide a legally sufficient reason to discount that testimony. Even if, as found in the Appeals Council's order granting review (AR 183), one of the medical experts failed to fully explain how Plaintiff met or equaled a listing, two other medical experts provided more detailed testimony explaining how they reached the conclusion that Plaintiff met or equaled a listing. *See* AR 70-74, 78, 87-94.

Although the ALJ improperly discounted the medical expert testimony, and that testimony clearly establishes that Plaintiff's disability onset during the adjudicated period, the Court nonetheless exercises its discretion to remand for further proceedings because the record raises serious doubt as to whether Plaintiff is entitled to CDB. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). In January 2020, the Commissioner's Payment Center indicated that Plaintiff was not eligible for CDB based on her father's lack of eligibility. AR 730-31. The Appeals Council instructed the ALJ to consider this finding, as well as whether Plaintiff

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

experienced any medical improvement, if the ALJ found Plaintiff disabled during the adjudicated period, but because the ALJ found her to be not disabled, the ALJ did not address those issues. *See* AR 182-84. Further proceedings would permit the ALJ to address those issues in the first instance, which will determine whether Plaintiff is indeed entitled to CDB.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 19th day of October, 2021.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER'S
DECISION - 7